UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIM HUBBARD,

                              Plaintiff,

v.                                                      6:14-CV-1401
                                                          (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| KIM HUBBARD, PRO SE<br>270 Day Ave.<br>Rome, NY 13440 | KIM HUBBARD, PRO SE |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DANIEL R. JANES, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 19.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Kim Hubbard ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's

unopposed motion for judgment on the pleadings. (Dkt. No. 17.) For the reasons set forth below, it is recommended that Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on July 20, 1982. (T. 88.) She completed four years of college. (T. 109.) Generally, Plaintiff's alleged disability consists of diabetes, attention deficit hyperactivity disorder ("ADHD"), back impairments, and anxiety. (T. 108.) Her alleged disability onset date is September 22, 2010. (T. 60.) Her date last insured is June 30, 2015. (*Id.*) She previously worked as a customer service representative, medical records scanner, processor, waitress, and child care provider. (T. 109.)

### B.    Procedural History

On February 25, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 60.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 11, 2013, Plaintiff appeared, pro se, before the ALJ, David J. Begley. (T. 25-59.) The ALJ advised Plaintiff of her right to be counseled by an attorney or representative, but Plaintiff waived that right. (T. 28-29.) On June 5, 2013, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-24.) On September 22, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff, again appearing pro se, timely sought judicial review in this Court. On November 19, 2014, the Court issued Plaintiff a copy of this Court's General Order 18, governing the procedural rules with respect to Social

Security appeals. (Dkt. No. 3.) At that time the Court also issued Plaintiff a copy of the Pro Se Handbook and Notice. (Dkt. No. 4.)

Pursuant to General Order 18, plaintiffs are notified that "the failure to file a brief as required by this order will result in the consideration of this appeal without the benefit of plaintiff's arguments and may result in a decision heavily influenced by the commissioner's version of the facts and subsequent dismissal of your appeal." N.D.N.Y. General Order 18 at 4.

Plaintiff failed to file a brief by the April 27, 2015 deadline and because of her pro se status, the Court granted an extension to June 1, 2015. (Dkt. No. 14.) Plaintiff failed to file a brief by June 1, 2015 and the Court directed Defendant to file her brief. (Dkt. No. 15.) As of the date of this report and recommendation, Plaintiff has not filed a brief.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-24.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2015 and Plaintiff had not engaged in substantial gainful activity since September 22, 2010. (T. 12.) Second, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus, hyperthyroidism, degenerative disc disease of the lumbar and cervical spine, left wrist tendinitis, left wrist carpal tunnel syndrome (status post release), right wrist capsulitis, panic disorder, and ADHD. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 12-13.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff:

3

> [could] not climb ladders, ropes, or scaffolds; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl; work [was] limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work-place changes, and only occasional interaction with coworkers and supervisors; [and] no regular interaction with the general public.

(T. 13-14.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20-21.)

## II. DEFENDANT'S BRIEFING ON HER MOTION FOR JUDGMENT ON THE PLEADINGS

In support of her motion for judgment on the pleadings, Defendant makes four arguments. First, Defendant argues Plaintiff knowingly and voluntarily waiver her right to representation. (Dkt. No. 17 at 11-12 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC finding was supported by substantial evidence. (*Id.* at 12-14.) Third, Defendant argues the ALJ's step five finding was supported by substantial evidence. (*Id.* at 14.) Fourth, and lastly, Defendant argues Plaintiff failed to meet her burden. (*Id.* at 14-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### A. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### IV. ANALYSIS

In a civil case, the Court may dismiss an action where, as here, "the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order...."

Fed. R. Civ. P. 41(b); *Storey v. O'Brien,* No. 10–3303, 2012 WL 1889408, at *1 (2d Cir. May 25, 2012). Further, other districts in the Second Circuit have dismissed Social Security appeals, sua sponte, due to a pro se plaintiff's failure to prosecute. *See Gonzalez v. Commissioner of Social Security,* No. 09–CV–10179, 2011 WL 2207574, at *2 (S.D.N.Y. June 2, 2011), *see also Winegard v. Barnhart*, No. 02-CV-6231, 2006 WL 1455479, at *9-10 (W.D.N.Y. Apr. 5, 2006). However, the Court declines to do so in this case.

In this District, General Order No. 18 mandates a different course in Social Security cases. General Order 18 cautions plaintiffs that "Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to relief. The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal." N.D.N.Y. General Order No. 18 at 4. General Order 18 thus states that the Court will "consider" the case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts." *Id.* In a case such as this, where Plaintiff is proceeding pro se, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants. Accordingly, the Court has, despite Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence. *See Gregorka v.*

*Comm'r of Soc. Sec.,* No. 6:13-CV-1408, 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015).

After a careful review of the administrative record on appeal, the Court recommends the Commissioner's determination be affirmed, for the reasons stated in Defendant's memorandum of law, that (1) the Plaintiff knowingly and voluntarily waived her right to representation, (2) the ALJ's RFC finding was supported by substantial evidence, (3) the ALJ's step five finding was supported by substantial evidence, and (4) Plaintiff failed to meet her burden. (Dkt. No. 17 at 11-15 [Def.'s Mem. of Law].)

### A. Plaintiff Knowingly and Voluntarily Waived Her Right to Representation

Although plaintiffs do not have a constitutional right to counsel at a Social Security hearings, they do have a statutory and regulatory right to be represented if they chose to obtain counsel. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. Here, the Commissioner sent Plaintiff an acknowledgement letter explaining the hearing process and advising her of her right to representation, as well as the availability of free legal services. (T. 77-78.) At the hearing, the ALJ again reviewed with Plaintiff her right to have representation and Plaintiff knowingly waived that right. (T. 28-30.) Therefore, the Commissioner and ALJ complied with their obligations to inform Plaintiff of her right to counsel and Plaintiff knowingly and voluntarily waived her right.

### B. The ALJ's RFC Determination

A plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). Here, the ALJ's RFC determination was supported by substantial evidence, specifically, the medical source opinions of consultative examiners Dennis Noia, M.D. and Pamela Tabb, M.D.

An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

Dr. Noia performed a psychiatric consultative exam on April 30, 2012. At that time he observed Plaintiff was cooperative and her manner of relating, social skills, and overall presentation were adequate. (T. 205.) He further observed her speech was normal, her thought process was normal, her mood was calm, and her affect was congruent. (T. 206.) Dr. Noia observed Plaintiff's attention and concentration were intact, her recent and remote memory skills were "mildly to moderately" impaired; and her intellectual functioning was average. (*Id.*) In a medical source statement, Dr. Noia opined Plaintiff was capable of understanding and following simple instructions and directions; capable of performing simple and some complex tasks; capable of maintaining attention and concentration; could regularly attend to a routing and maintain a schedule; capable of making appropriate decisions; able to relate to and interact moderately well with others; and Plaintiff had some difficulty dealing with stress. (T. 206-207.)[2]

Dr. Tabb performed a physical consultative exam on April 30, 2012. At that time she observed Plaintiff appeared in no acute distress, had a normal gait, could walk on heels and toes, needed no help changing for exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 209.) Dr. Tabb observed

---

[2] Plaintiff did not undergo mental health treatment. In November of 2011, during an evaluation by her orthopedic provider, Plaintiff denied depression and anxiety. (T. 183.) In December of 2011, Plaintiff complained to her primary care provider of "slight depression." (T. 177.) A prescription history indicated Plaintiff was prescribed Alprazolam for her anxiety by Scott Brehaut, M.D. (T. 167.)

9

Plaintiff's cervical spine and lumbar spine showed full flexion, extension, later flexion bilaterally and full rotary movement bilaterally. (T. 210.) Dr. Tabb observed Plaintiff had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally. (*Id.*) Dr. Tabb observed Plaintiff had mild tenderness in the medial aspect of her left wrist. (*Id.*) In a medical source statement Dr. Tabb opined Plaintiff had mild restrictions for performing activities involving repetitive movement of the left wrist. (T. 211.)[3]

In making his physical RFC determination, the ALJ also relied on objective medical imagining from March of 2012 which indicated "very minimal" degenerative change and "mild" disc space narrowing in the mid thoracic spine. (T. 200.) Medical imaging from March of 2012 indicated degenerative disc disease with "mild" multilevel bulging in the lumbar spine. (T. 201.) Medical imaging of Plaintiff's cervical spine revealed "mild" disc desiccation with "minimal" disc bulging at multiple levels.

The ALJ thoroughly discussed all the medical evidence in the record and his RFC determination was supported primarily by the consultative examiners, Drs. Noia and Tabb. In addition to Dr. Tabb's opinion, the ALJ's physical RFC determination was supported by Plaintiff's treating physicians who reported Plaintiff had normal gait and stance, appeared in no acute distress, ambulated well, and had negative straight leg raises. (T. 182-185, 192-197.)

Plaintiff's orthopedic surgeon, Gregory Shankman, M.D., completed a medical source statement in August of 2007, which the ALJ discussed in his opinion but ultimately rejected. Dr. Shankman opined Plaintiff's pain was "too severe for her to work" and she was "totally and permanently disabled." (T. 161.) Dr. Shankman further

---

[3] In June of 20120, subsequent to Plaintiff's examination by Dr. Tabb, she underwent CTS release surgery. (T. 255.)

opined Plaintiff could not walk for more than five minutes without pain, could not sit for more than five minutes without severe pain, and could not sleep for more than a few hours without pain. (*Id.*) He opined Plaintiff could not lift or carry more than ten pounds. (*Id.*) The ALJ properly assigned Dr. Shankman's opinion "limited weight" because there were no records to support his opinion, Plaintiff's own allegations of limitations were not as restrictive as Dr. Shankman's, and the opinion predated Plaintiff's alleged onset date by over three years. Therefore, for the reasons stated herein, and for the reasons provided in Defendant's brief, the ALJ's RFC determination was supported by substantial evidence.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant

has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ properly applied the Regulations in his credibility analysis. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (T. 15.) The ALJ provided an accurate synopsis of Plaintiff's testimony. (T. *Id.*) The ALJ discussed objective medical evidence and opinion evidence which he found to be inconsistent with Plaintiff's statements. (T. 15-18.) The ALJ discussed Plaintiff's activities of daily living, treatment she received for her impairments including

12

medication, and aggravating factors. (T. 15.) Therefore, for the reasons stated herein, the ALJ properly adhered to the Regulations in making his credibility determination and substantial evidence supports the ALJ's credibility determination.

### D. The ALJ's Step Five Determination

At step five of the sequential process, the ALJ considered Plaintiff's age, education, and RFC, to determine whether there were a significant number of jobs in the national economy which Plaintiff could perform. 20 C.F.R. § 404.1569. In making his determination, the ALJ relied on the testimony of a vocational expert ("VE"). (T. 56-58.) At the hearing the VE testified that based on a hypothetical individual with Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers in the national economy which she could perform. (T. 56-57.) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). **ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 14, 2016

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge